UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| PLATEAU CASUALTY INSURANCE COMPANY and PLATEAU WARRANTY COMPANY, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 2:22-cv-00007 ) |
| SECURRANTY, INC., | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

After Plateau Casualty Insurance Company ("PCIC") and Plateau Warranty Company ("PWC") terminated an Agreement to insure Securranty Inc.'s warranties, Securranty allegedly continued to represent that its warranties were still insured by Plaintiffs. As a consequence, Plaintiffs filed suit alleging breach of contract under Tennessee common law and false advertising in violation of the Lanham Act, 15 U.S.C. 1125(a). Now before the Court is Securranty's fully-briefed Motion to Dismiss the Lanham Act claim. (Doc. Nos. 20, 21, 24, 26). For the reasons that follow, the Motion will be granted.

**I. Factual Background and Procedural Posture**

Because the Court is considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the facts are drawn from the Complaint, construed in Plaintiff's favor, and accepted as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). They are as follows:

PCIC is an insurance company and PWC administers consumer warranty products. Securranty sells extended warranties for various products including laptops, tablets, and cell phones. Securranty also sells certain insurance products that are issued by PCIC. (Doc. No. 1, Cmpl. ¶¶ 6-7).

The parties entered into an Administration Insured Program Agreement effective January 1, 2020. Under the Agreement, Securranty provided extended warranties for certain products and those warranties were backed by Contractual Liability Insurance Policies ("CLIPs") issued by PCIC in exchange for the payment of premiums. Securranty was also required to provide certain data on a regular basis to Plaintiffs. (Id. ¶¶ 8-10).

On July 30, 2021, PCIC sent Securranty an "Agreement Cancellation Letter" because Securranty failed to timely pay premiums and provide the data that Plaintiffs needed to service and administer their business. A little over three months later, on November 2, 2021, PCIC sent a follow-up letter, agreeing to withdraw the Cancellation Letter because Securranty had paid the outstanding premiums. However, Securranty was warned that it must continue to pay premiums in a timely fashion, and that PCIC was not waiving any of its contractual rights. (Id. ¶¶ 11-13).

Notwithstanding PCIC's warning, Securranty failed to make its premium payment on December 10, 2021. It also failed to send PCIC claim files for November and December of that year. Accordingly, on December 15, 2021, Plateau sent Securranty a Cease and Desist letter directing it to "immediately cease issuing new Service Contracts or Insurance Policy Certificates that are insured or provided by Plateau[.]" (Id. ¶ 17). This was followed by formal notice on December 30, 2021, cancelling the Agreement effective that date, and withdrawing the forbearance granted by PCIC in its November 2, 2021 letter. (Id. ¶¶ 20).

On January 26, 2022, PCIC was informed by Securranty that it had stopped issuing new polices backed by PCIC, but this statement was false when made, and Securranty continued to issue warranties purportedly backed by PCIC. Moreover, Securranty failed to pay its outstanding premiums or provide PCIC with the information (including complete policy and claims files)

2

Case 2:22-cv-00007   Document 34   Filed 06/21/22   Page 2 of 9 PageID #: 210

required under the Agreement. (Id. ¶¶ 21, 22).

With respect to the breach of contract claim, Plaintiffs allege that "Securranty has failed to cure any of its material breaches of the Agreement." (Id. ¶ 22). As for the Lanham Act claim, Plaintiffs contend that, after the Agreement was terminated effective December 31, 2021, Securranty "continued to falsely represent that its warranties are insured by Plateau." (Id. ¶ 27). More specifically, the Plaintiff says the "Terms and Conditions" section of Securranty's Protection Plan stated, and still states, that its obligations under the Plan "are guaranteed under a reimbursement insurance policy issued by Plateau Insurance Company" located in Crossville, Tennessee; that the plan in Florida "is directly issued by the insurer . . . Plateau Insurance Company"; and that the Plan in Washington is "backed by the full faith and credit" of Plateau. (Id. ¶ 27). These statement are allegedly false because, "[p]rior to the termination of the Agreement, . . . Securranty's warranties were backed by CLIPs issued by PCIC, not 'Plateau Insurance Company'[,]" and "[a]fter the termination of the Agreement, . . . Securranty's warranties were no longer backed by CLIPs issued by any Plateau-related company." (Id. ¶ 28). Such statements, Plaintiffs insist, violate the Lanham Act because they "were used in a commercial advertisement or promotion." (Id. ¶ 31).

In its Motion to Dismiss, Securranty argues that Plaintiffs' Lanham Act claim fails for two reasons. First, Plaintiffs have not adequately alleged a misrepresentation in "commercial advertising or promotion." Second, Plaintiffs fail to allege the loss of any customers as a result of Securranty's alleged deception. Because the Court agrees with the first argument and it is dispositive of the motion, the Court finds it unnecessary to discuss the second argument in much detail but makes mention of it should Plaintiffs attempt to amend their Complaint.

## II. Legal Discussion

Section 43(a)(1) of the Lanham Act provides in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

*       *       *

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

11 U.S.C. § 1125(a). To succeed on a claim under this provision, a plaintiff must allege and ultimately prove the following: "1) the defendant has made false or misleading statements of fact concerning his own product or another's; 2) the statement actually or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; 4) the advertisements were introduced into interstate commerce; and 5) there is some causal link between the challenged statements and harm to the plaintiff." Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc., 185 F.3d 606, 613 (6th Cir. 1999) (citing U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 922–23 (3d Cir.1990); ALPO Petfoods, Inc. v. Ralston Purina Co., 913 F.2d 958, 964 (D.C. Cir.1990)).

"Neither the Act's legislative history nor the Act itself defines 'advertising' or 'promotion.'" Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 734 (9th Cir. 1999) (citing Seven–Up Co. v. Coca–Cola Co., 86 F.3d 1379, 1383 (5th Cir.1996)). Acknowledging as much, the

4

Sixth Circuit endeavored to "add[] clarity beyond our existing precedent" in Grubbs v. Sheakley Grp., Inc., 807 F.3d 785, 799 (6th Cir. 2015). The court began by noting that to be "advertising or promotion," the "communications need not necessarily resemble traditional television, radio, print, or Internet advertisements to fall within the purview of the Lanham Act." Id. at 799. The court then joined the Second Circuit in holding that the "commercial advertising or promotion" must consist of "'commercial speech' that is made for the purpose of influencing the purchasing decisions of the consuming public," and "that 'the touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market.'" Id. at 800 (quoting Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 57 (2d Cir. 2002)). After extended discussion, the Sixth Circuit ultimately "define[d] 'commercial advertising or promotion' as: (1) commercial speech; (2) for the purpose of influencing customers to buy the defendant's goods or services; (3) that is disseminated either widely enough to the relevant purchasing public to constitute advertising or promotion within that industry or to a substantial portion of the plaintiff's or defendant's existing customer or client base." Id. at 801.

Securranty asserts that the alleged misrepresentations in its warranty cannot fall within the definition of "commercial advertising or promotion" because the references to Plateau Insurance are "buried in single-spaced type in the final section" of the Terms and Condition that are provided to customers *after* a sale. (Doc. No. 21 at 2, 6). However, Securranty "cites no case law, and [the Court has] found none, in which a court has held that warranty policies fall outside the scope of the Lanham Act as a matter of law." In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., 383 F. Supp. 3d 187, 248 (S.D.N.Y. 2019). That said, the Court has located several decisions

concluding that a product insert that a consumer finds only after opening an item cannot be "commercial advertising or promotion" for purposes of Section 43(a)(1) of the Lanham Act. See Duer v. Bensussen Deutsch & Assocs., Inc., No. 1:14-CV-01589-ELR, 2015 WL 11256568, at *5 (N.D. Ga. July 8, 2015) ("A product insert cannot influence a consumer's purchasing decision because the public would only see a product insert after purchasing the product."); Wilchcombe v. Teevee Toons, Inc., 515 F. Supp. 2d 1297, 1306 (N.D. Ga. 2007) ("CD inserts that defendants distributed with [an] Album do not qualify as commercial advertising or promotion" because "[t]he public retrieved the CD inserts only after buying the Album, and therefore they could not have had a material effect on purchasing decisions."); Gillette Co. v. Norelco Consumer Prod. Co., 946 F. Supp. 115, 135 (D. Mass. 1996) ("Advertising or promotion implies that the statements are made to influence a consumer in his or her choice to purchase a product. Statements made inside the product's packaging, available to consumers only after the purchase has been made, do not affect the choice to purchase, that choice having been made at an earlier point.").

Similarly, it has been held that user manuals provided to the customer upon purchase of a product are not commercial advertising under the Lanham Act, and this remained so notwithstanding that the manuals were available at trade shows because they were not made available to the general purchasing public or in sufficient quantities to constitute an advertisement. Marcyan v. Nissen Corp., 578 F. Supp. 485, 507 (N.D. Ind.1982). And, in a patent case where the court specifically looked to "the body of law interpreting 'advertising' in the Lanham context," it was determined that a "warranty card" was not advertising "because the warranty card [was] accessible after the product [wa]s sold[.]'" Oakley, Inc. v. Bugaboos Eyewear Corp., 757 F. Supp. 2d 1050, 1057 (S.D. Cal. 2010).

6

The logical force of the cited cases applies to the Terms and Conditions of Securranty's warranty and its references to "Plateau Insurance." This assumes, of course, that Securranty is correct that the purchaser of a laptop or cell phone is unaware of the language in the warranty until after the purchase has been made. The Complaint does not say one way or the other, but an inference to be drawn from its silence is that this statement is correct.

The Terms and Conditions reference the past by thanking the customer for his or her purchase and speaks in terms of individuals who have "purchased the protection plan." (Cmpl., Doc. No. 1-2 at 5). More tellingly, the Complaint contains no allegations that purchasers are given a copy of the Terms and Conditions beforehand, and PCIC makes no such arguments in its response brief. Instead, PCIC relies upon Securranty's website that purportedly contains its Protection Plans and the references to Plateau Insurance in those plans.

Plaintiffs' reliance on what may or may not be on Securranty's website is improper for several reasons. First, no mention is made of the website in the Complaint, and the Court cannot consider matters outside the pleading on a Motion to Dismiss unless they are "integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." Wyser–Pratte Mgmt. Co. v. Telxon Corp., 413 F.3d 553, 560 (6th Cir. 2005). Second, and contrary to Plaintiffs' suggestion, it is generally improper for a court to take judicial notice of a non-governmental website, particularly when it is used for the truth of the matter, and not its mere existence. Passa v. City of Columbus, 123 F. App'x 694, 697 (6th Cir. 2005). Third, Plaintiffs do not allege that any potential purchasers reviewed Securranty's website, let alone that they did so to review its Terms and Conditions before making a purchase, yet, as already noted, Plaintiffs' Lanham Act claim requires plausible allegations to suggest that Securranty made the alleged

misrepresentation for "the purpose of influencing the purchasing decisions of the consuming public," and that "the contested representations [were] part of an organized campaign to penetrate the relevant market intended to influence potential customers to purchase its product." Grubbs, 807 F.3d at 800.

Problems with the improper reliance on Securranty's website to the side, the well-pleaded factual allegations are simply not enough to support Plaintiffs' Lanham Act claim. Plaintiffs conclusorily allege that the statements made by Securranty "were used in commercial advertisement or promotion," and "deceive third parties in a material way," (Cmpl. ¶¶ 29, 30), but "a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiffs next quote Pom Wonderful LLC v. Coca-Cola Co., 573 U.S. 102, 107 (2014) (citation omitted) for the proposition that "Plateau is 'within the class that may invoke the Lanham Act because [it] may suffer 'an injury to a commercial interest in sales or business reputation proximately caused by a defendant's misrepresentation,'" and then alleged that the "statements by Securranty have caused or are likely to cause irreparable harm to Plateau's reputation and commercial injury to Plateau[.]" (Cmpl. ¶¶ 32, 33). However, Pom Wonderful quotes Lexmark Int'l v. Static Control Components, Inc., which specifically states that, "like any other element of a cause of action, [proximate causation] must be adequately alleged at the pleading stage in order for the case to proceed," and that "[i]f a plaintiff's allegations, taken as true, are insufficient to establish proximate causation, then the complaint must be dismissed[.]" 572 U.S. 118, 134 (2014). Such is the case here.

### III. Conclusion

On the basis of the foregoing, Securranty's Motion to Dismiss (Doc. No. 20) is **GRANTED** and Plaintiffs' Lanham Act claim as alleged in Count I is hereby **DISMISSED**. The file is returned

to Magistrate Judge Newbern for further pretrial case management.

       IT IS SO ORDERED.

                                                    _____
                                                    WAVERLY D. CRENSHAW, JR.
                                                    CHIEF UNITED STATES DISTRICT JUDGE